UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRY DAVIS                                          CIVIL ACTION

VERSUS                                               NO. 13-5263

CAROLYN W. COLVIN, COMMISSIONER                      SECTION "S" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Terry Davis, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") under Title II and supplemental security income benefits

("SSI") under Title XVI of the Act.  42 U.S.C. §§ 405(g), 423, 1381a.  This matter was

referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local

Rule 73.2(B).

I.      PROCEDURAL HISTORY

Davis filed applications for DIB and SSI on May 4, 2011, alleging disability since

June 15, 2010, due to depression.  (Tr. 126-38, 158).  After his applications were denied

at the agency level, he requested a hearing before an Administrative Law Judge ("ALJ"),

which was held on April 12, 2012.  (Tr. 26-45).  On May 25, 2012, the ALJ issued a

decision denying the applications for benefits.  (Tr. 13-22).  After the Appeals Council

denied review on July 17, 2013, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 1-3).

Plaintiff filed a timely memorandum of facts and law.  Record Doc. No. 13. Defendant filed a timely reply memorandum.  Record Doc. No. 14.

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ erred by finding that plaintiff's spinal disorder is not a severe impairment.

B.    The ALJ erred in determining that Davis has the residual functional capacity to perform a full range of work at all exertional levels, with certain nonexertional limitations.

C.    The ALJ erred in failing to find that Davis meets Medical-Vocational Rule 201.09.

D.    The ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating psychiatrist.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Plaintiff has not engaged in substantial gainful activity since June 15, 2010, the alleged onset date.

2.    He meets the insured status requirements of the Act through September 30, 2014.

2

3.      He has severe impairments consisting of major depressive disorder and history of polysubstance abuse, and a nonsevere impairment consisting of disorder of the spine.

4.      Davis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.      He has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations:  he has the mental ability to understand, remember and carry out simple job instructions and make judgments in simple work-related situations.

6.      Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

7.      He is capable of performing his past relevant work as a longshoreman.

8.      Davis has not been under a disability from June 15, 2010 through the date of this decision.

(Tr. 15-22).

IV.   ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir.

2005)); <u>Stringer v. Astrue</u>, 465 F. App'x 361, 363 (5th Cir. 2012) (citing <u>Waters v.</u> <u>Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002)).   Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Richard ex rel. Z.N.F.</u>, 480 F. App'x at 776; <u>Stringer</u>, 465 F. App'x at 363-64; <u>Perez</u>, 415 F.3d at 461.   This court may not reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. <u>Halterman ex rel. Halterman v.</u> <u>Colvin</u>, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing <u>Newton</u> <u>v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000)); <u>Stringer</u>, 465 F. App'x at 364.   The Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>Luckey v.</u> <u>Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992).   Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461).   Any findings of fact by the Commissioner that are

supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2011).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1]  Id. §§ 404.1520, 416.920;

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant

<u>Alexander v. Astrue</u>, 412 F. App'x 719, 720 (5th Cir. 2011) (citing <u>Audler v. Astrue</u>, 501 F.3d 446, 447 (5th Cir. 2007)); <u>Perez</u>, 415 F.3d at 461.  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  <u>Id.</u>

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  <u>Alexander</u>, 412 F. App'x 720-21; <u>Perez</u>, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability:  "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  <u>Chrisner v. Astrue</u>, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th Cir. 1991)); <u>accord</u> <u>Perez</u>, 415 F.3d at 463.

---

cannot meet the demands, he or she will be found disabled.  <u>Id.</u> §§ 404.1520(f), 416.920(f).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  <u>Id.</u> Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.   Factual Background

Davis testified that he chose the alleged onset date of June 15, 2010, because he was not able to focus on his work duties and became a liability to his employer, who let him know about it.  He said he last worked for two or three days in 2010, because there was not enough work and he was unable to perform the duties.  (Tr. 30-31).  Upon questioning by the ALJ regarding an earnings record stating that Davis was hired on July 26, 2010, plaintiff agreed that he worked for a few days at that time.  (Tr. 44).

Davis said he is being treated at Health Care for the Homeless on Jackson and Lasalle Streets in New Orleans, and he also sees a primary doctor at LSU for his back and legs.  (Tr. 31-32). He stated that he sees a psychiatrist, Dr. Calhoun, at Chartres Pontchartrain Behavioral Health Center ("Chartres") once a month and that he has been going there for two to three years.  He testified that he is prescribed Zoloft and a number of other medications that he could not recall.  He said he does not know what his doctors have diagnosed.  (Tr. 32-33).  He stated that he cannot work because of his mental status, meaning that he breaks down crying and cannot focus on anything.

Davis recalled that he was diagnosed with depression, but could not say what level of depression.  He testified that he is depressed every day.  He said he gets nervous and upset, talks to himself and has crying spells for no reason.  (Tr. 33).  He stated that he never went to the emergency room for his mental condition, but went there "just to be

7

admitted" because he was hearing and seeing things that were not actually there, such as his deceased sister, mother and father. (Tr. 33-34). He testified that, since at least 2009, he finds himself holding conversations with them. He said he only sees people he knows. He stated that he really misses his parents. He said he tries to do things for himself, but finds himself unable to focus and forgets what he is doing.

Plaintiff testified that he sees deceased people more than once a day, every day. (Tr. 34-35). He said he cannot sleep because he worries about what tomorrow will bring, what he will have to face and things over which he has no control. He stated that he walks around in a daze, then finds himself sitting on his mother's porch step. He said he is doing better with his medication, which helps him feel more relaxed and less jumpy. He testified that he takes his medication three times a day. (Tr. 35).

Davis remembered seeing the consultative examiner, Dr. Mours, in 2011 at the request of the Commissioner. Plaintiff thought that he told Dr. Mours that he sees persons who are not there. He said he was still experiencing daily hallucinations when he saw Dr. Mours. The ALJ pointed out that Dr. Mours's report states that Davis denied having visual or auditory hallucinations. (Tr. 35-36).

Plaintiff testified that he recently became homeless, but now has an apartment through Unity, where he lives alone. He said he does his own household chores, such as laundry, sweeping and mopping, which take him all day to complete. He stated that a

8

girlfriend comes in to cook for him.  (Tr. 37-38).  He testified that he does some of his household chores at night when he cannot sleep.

Davis stated that he completed tenth grade, but that he reads at a second grade level.  He said he can write and spell his own name and his brother's name.  He testified that he received unemployment benefits in the past, which were deposited directly into a bank account, and that he used an ATM card to buy groceries, underwear, socks, shoes and other small personal items.  (Tr. 38).  Plaintiff stated that he has not had a driver's license in the past three years.  He said he is right-handed.

Davis testified that sometimes his back hurts so much that he cannot get out of bed, cannot reach, cannot put on his shoes and must lie down to put on his pants.  He said that some days are better.  He stated that he needs to take his medication just to get up and get dressed.  He said he forgets where he is going by the time he is dressed.  He stated that no doctor at Chartres has told him that his depression is in remission.  He testified that he had an appointment to see his doctor one week after the hearing date.

When questioned about the medical records that refer to his past substance abuse, plaintiff stated that he used to do drugs, but is not using them anymore and has no desire to use them.  He said, "It's just a thing of the past."  He testified that he last used drugs about three to four <u>weeks</u> earlier.  (Tr. 40) (emphasis added).

9

Regarding his visual hallucinations, Davis testified that, "just now as I was sitting here I see, I could see my sister sitting there. . . .  I hear things and see people that's close to me and I feel that they're still here with me."  He could not recall whether he told Dr. Mours that he does not see things.

Plaintiff said he reacts to stress by "breaking down in tears or just find myself going off like a little kid in (inaudible) for a week."  (Tr. 41).  He said that he can remember what happened this morning or last night, but has to "take a moment" to try to remember anything earlier than that, and he may or may not remember.  (Tr. 41-42). He stated that he easily loses his concentration.  He gave an example that he would go into the bathroom to comb his hair and then just stand in front of the mirror trying to remember why he was there.

Davis testified that he can stand for 30 to 40 minutes and then will "get shaky."  He said his left leg goes numb and feels "like a refrigerator (inaudible), you know, freezer (inaudible)."  He stated that he has trouble using stairs because he loses his balance easily and is afraid that he will lose his balance while climbing stairs.  He testified that he usually lies down daily between 2:00 and 3:30 or 4:00 p.m. because he feels dizzy and tired.  (Tr. 42).

Plaintiff said that he has not had back surgery and that no doctor has recommended either surgery or an injection for his back.  He stated that it takes a long time to get an

appointment at LSU and that his next appointment was in July 2012.  He said he just takes medication in the meantime.  (Tr. 43).

### C.   Vocational Expert Testimony

A vocational expert, Mary Catherine Elvir, testified at the hearing that plaintiff's past relevant work as a longshoreman is classified as very heavy and unskilled.  (Tr. 43).

### D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 16-21).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

### E.   Plaintiff's Appeal

1.   The ALJ's finding that plaintiff's spinal disorder is not a severe impairment is irrelevant and non-prejudicial when the ALJ found him disabled at step four.

Plaintiff bears the burden of proving that he suffers from a disability under the first four parts of the sequential inquiry.  Perez, 415 F.3d at 461.  The ALJ found at step two of the analysis that Davis has severe impairments consisting of major depressive disorder and history of polysubstance abuse, and a nonsevere impairment consisting of a disorder of the spine.  At the fourth step, the ALJ found that Davis has the residual functional capacity to perform his past relevant work as a longshoreman, which is very heavy,

unskilled work, with the nonexertional limitations that he has the mental ability only to understand, remember and carry out simple job instructions and make judgments in simple work-related situations.

Davis argues that the ALJ's finding that his spinal disorder is not severe is contrary to Stone v. Heckler, 752 F.2d 1099, 1011 (5th Cir. 1985), and not supported by substantial evidence.  In the Fifth Circuit, "[a]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" Herrera v. Comm'r of Soc. Sec., 406 F. App'x 899, 902 (5th Cir. 2010) (quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)); accord Stone, 752 F.2d at 1011.  The ALJ in the instant case cited the relevant legal standard and explained why he found at step two of the sequential evaluation that plaintiff's spinal disorder is not a severe impairment.

When the ALJ has proceeded beyond step two to find that plaintiff is not disabled at a subsequent step of the sequential evaluation, plaintiff's argument that the ALJ failed to find that a particular impairment is severe

> is inapposite because the ALJ did not [deny] plaintiff's benefits based on a finding that her impairments are not severe.  See Chapparo v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987) (argument regarding improper application of Stone standard irrelevant to disposition of case if outcome of case [did] not turn on issue of severity); see also Shipley v. Director of Health and

Human Services, 812 F.2d 934, 935 (5th Cir. 1987).  The ALJ's report contains a statement of the Stone standard and a determination that as it applied to this case, [one of claimant's several alleged impairments] is a severe impairment. . . .   The ALJ then proceeded to the next step of the sequential evaluation and assessed whether an impairment or a combination of plaintiff's impairments met or exceeded the severity of the impairments listed in the appendix.  See 20 C.F.R. § 404.1594(f)(2).  In the absence of a "non-severe" finding as to any one of plaintiff's impairments and a decision to [deny] plaintiff's benefits based on a "non-severe" finding, plaintiff cannot complain that any prejudice resulted from the ALJ's performance at this stage in the evaluation.  See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) (decision will not be reversed where claimant makes no showing that she was prejudiced by deficiencies she alleges).

Lawrence v. Barnhart, No. 01-1366, 2002 WL 356316, at *2 (E.D. La. Mar. 4, 2002) (emphasis added); accord Kaul v. Colvin, No. 13-0093-LMA, 2013 WL 5757834, at *9 (E.D. La. Oct. 23, 2013); see also Lavery v. Astrue, No. V-11-3, 2012 WL 3276711, at *5 (S.D. Tex. Aug. 8, 2012) (quoting Bradshaw v. Astrue, No. 1:07-CV-0150-C, 2008 WL 4387087, at *5 (N.D. Tex. Sept. 26, 2008)) ("The Fifth Circuit's subsequent rulings, however, 'have clarified the holding to require remand only when the ALJ failed to reference the Stone standard and the case was adjudicated at step 2 of the sequential evaluation process.'") (emphasis added); Bradshaw, 2008 WL 4387087, at *6 (citing Robinson v. Barnhart, 183 F. App'x 451, 455 (5th Cir. 2006); Reyes v. Sullivan, 915 F.2d 151, 154 n.1 (5th Cir. 1990); Chapparo, 815 F.2d at 1011) ("In more recent cases, the Fifth Circuit has found no merit to claimants' arguments of ALJ error arising out of

13

the failure to correctly apply or state the <u>Stone</u> standard where the sequential evaluation process proceeds past step 2.").

"Because the ALJ did not summarily dispose of Plaintiff's claims at Step Two, but instead determined that Plaintiff had at least one severe impairment and proceeded to Step Four to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's residual functional capacity (RFC) assessment and ultimate determination that Plaintiff was not disabled." <u>Lavery</u>, 2012 WL 3276711, at *5 (citing <u>Chaparro</u>, 815 F.2d at 1011) (footnote omitted).

Having found that Davis had severe impairments, the ALJ proceeded through the subsequent steps of the evaluation, considered all of the evidence concerning plaintiff's medically determinable impairments and found at the fourth step that Davis is capable of performing his past relevant work.  The ALJ cited and used the <u>Stone</u> standard.  His failure to find that plaintiff's spinal disorder is severe is irrelevant and non-prejudicial.

Even if the court were to review the ALJ's step two determination, substantial evidence (discussed in the next section of this report and recommendation) supports his finding that plaintiff's spinal disorder is not severe for the reasons cited in the ALJ's opinion.  Accordingly, this assignment of error is meritless.

2.    Substantial evidence supports the ALJ's finding that Davis has the residual functional capacity to perform with the nonexertional limitations noted in the opinion.

Davis argues that the ALJ erroneously failed to incorporate into his residual functional capacity limitations that Davis claims are supported by the medical evidence and his credible testimony at the hearing.  He contends that the ALJ should have included restrictions based on plaintiff's spinal disorder, which allegedly limit his abilities to engage in prolonged sitting, standing and walking, and therefore would limit him to an ability to perform less than the full range of sedentary work.

Substantial evidence supports the ALJ's residual functional capacity determination.  The medical evidence is sparse, and the ALJ's summary of that evidence was thorough and substantially accurate.  As the ALJ stated in finding that plaintiff's spinal disorder was not severe, the medical evidence does not substantially support the extreme pain and functional limitations that Davis alleged result from his spinal disorder.

Davis first sought treatment for back pain at Health Care for the Homeless on March 17, 2011.  This was nine months after his alleged onset date of June 15, 2010 and two or more years after he stopped working in "'2008 or 2009'" because "'I just couldn't do the physical duties anymore,'" as he told consultative examiner James Mours, Psy.D., on August 3, 2011.  (Tr. 244).

15

Davis presented at Health Care for the Homeless complaining of lower back pain since a motor vehicle accident in 2000, which caused two slipped discs that were treated with pain medication and muscle relaxers; a heavy, dead weight feeling and numbness in his left leg since 2000; and increasing numbness in his hands and feet for the past six weeks.  He said he sometimes took Percocet obtained from his sister, who has breast cancer.  He reported that a sister, his mother and his father had all died of myocardial infarctions.  He said he smoked two packs of cigarettes a day for 37 years and drinks beer occasionally.  He denied any drug use.  (Tr. 238).

Physical examination by a nurse practitioner on March 17, 2011, revealed tenderness to touch in plaintiff's mid- to low back, positive range of motion in his neck and extremities, normal peripheral pulses and no difficulty in ambulation.  He was diagnosed with back and leg pain, a reported history of a slipped disc, numbness in his hands and feet, depression, insomnia, gastroesophageal reflux disease, smoker and

16

alcohol use.  He received prescriptions for meloxicam[2] for pain and ranitidine[3] for his reflux disease.  (Tr. 231-32).

Davis returned to Health Care for the Homeless on April 12, 2011, and reported that ranitidine was helping with his stomach problems, but meloxicam was not relieving his back pain.  The nurse practitioner discontinued meloxicam and prescribed 60 tablets of naproxen as needed for pain.  (Tr. 230-31).  At his next visit on May 16, 2011, Davis reported that naproxen did not "permanently relieve" his back pain, but he used pillows under his back for some relief.  He was diagnosed with back pain, referred to Physical Medicine Rehabilitation and directed to return in one month.  No new prescription was given.  (Tr. 229-30).

Davis did not receive any additional treatment until October 12, 2011, when he was seen at Medical Center of Louisiana–New Orleans by Quan Le, M.D.  He reported a one-year history of lower back pain, which had worsened in the last six months.  He had tried ibuprofen and naproxen with no relief, but had not tried physical therapy or

_____

[2]Mobic (generic name: meloxicam) "is a nonsteroidal anti-inflammatory drug (NSAID) used to treat osteoarthritis, rheumatoid arthritis in adults, and juvenile rheumatoid arthritis." PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/mobic (visited Mar. 13, 2014).

[3]Zantac (generic name:  ranitidine) "is used to treat ulcers in the intestines and stomach.  It is also used to prevent the occurrence of ulcers, to treat and prevent the erosion in the esophagus . . . caused by acid, to reduce stomach acid in certain diseases where the stomach secretes too much acid, and to treat gastroesophageal reflux disease (GERD)." Id., http://www.pdrhealth.com/drugs/zantac (visited Mar. 12, 2014).

17

injections.  He reported back pain radiating down both legs to both feet, with recent, frequent stumbling, but no falls.  He complained of neck pain radiating down both arms, with numbness and tingling in his fingers and difficulty grabbing and holding items bilaterally.  He had a medical history of substance-induced psychosis, cocaine use and cocaine intoxication, and exploratory surgery for internal bleeding from a motor vehicle accident ten years earlier.  He smoked a pack of cigarettes per day and "drinks 6 packs of beer within 2 days."  Both parents had died of myocardial infarctions.  (Tr. 257-58).

Upon physical examination, Davis was able to heel and toe walk.  He had decreased active range of motion in his cervical and lumbar spines and tenderness to palpation in both areas.  He had decreased sensation and good muscle strength[4] in all extremities.  Davis had positive straight leg raising test[5] and FABER test[6] bilaterally.  Dr.

---

[4]Plaintiff's muscle strength was rated at four out of a possible five, which is considered "good." Mark Dutton, "Principles of Manual Muscle Testing" in Orthopaedic Examination, Evaluation, and Intervention (McGraw-Hill Professional 2009), http://highered.mcgraw-hill.com/sites/0071474013/student_view0/chapter8/manuaul_muscle_testing.html (visited Mar. 14, 2014).

[5]The straight leg raising test is used to detect sciatica, which "is pain along the sciatic nerve.  It usually results from compression of nerve roots in the lower back."  Neck and Back Pain, The Merck Manual (Merck Sharp & Dohme Corp.; last full review/revision Mar. 2013 by Sally Pullman-Mooar, MD; content last modified May 2013), http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/neck_and_back_pain/sciatica.html?qt=straight leg raising&alt=sh (visited Mar. 13, 2014).

[6]FABER is an acronym for flexion, abduction, external rotation.  It is used "for stressing the [sacroiliac] joint, looking for symptoms localized to this area, and for isolating symptoms to the hip." J.W. Thomas Byrd, M.D., Evaluation of the Hip:  History and Physical Examination, N. Am. J. Sports Phys. Therapy, Nov. 2007, at 231-40 (avail. in Nat'l Ctr. for Biotech. Info., U.S. Nat'l Library of

Le diagnosed neck/low back pain with radicular symptoms affecting predominantly the left upper and lower limbs, and clinical carpal tunnel syndrome bilaterally.   Dr. Le ordered x-rays and nerve conduction studies.   Dr. Le prescribed Neurontin[7] and amitriptyline[8] at bedtime as needed for pain or sleep. (Tr. 258).

Cervical and lumbar spine x-rays taken on the same date showed mild to moderate degenerative changes.  (Tr. 260-61).  Davis returned for testing on October 31, 2011, but was unable to tolerate the electromyographic nerve conduction studies.  Neither carpal tunnel syndrome nor cervical or lumbar radiculopathy could be ruled out.  (Tr. 255).

A claimant's lack of need for strong medication or a failure to seek treatment are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Clayborne v. Astrue, 260 F. App'x 735, 737 (2008); Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel,  205 F.3d 1338,

Medicine, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2953301 (visited Mar. 13, 2014)).

[7]Neurontin is used to help relieve certain types of nerve pain and also to treat partial seizures when taken in combination with other medicines. Id. http://www.pdrhealth.com/drugs/neurontin (visited Mar. 13, 2014).

[8]Amitriptyline is a tricyclic antidepressant used to treat depression.  PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/amitriptyline (visited Mar. 13, 2014).

1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)).

In addition, a medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling. Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir. 2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988), abrogated on other grounds by Sullivan v. Zebley, 493 U.S. 521, 527 (1990)); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Acosta v. Astrue, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012); Quintanilla v. Astrue, 619 F. Supp. 2d 306, 321 (S.D. Tex. June 27, 2008); see also Thibodeaux v. Astrue, 324 F. App'x 440, 443-44 (5th Cir. 2009); Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000).

The mere diagnosis of an impairment, even if it is a severe impairment under Social Security regulations, does not establish a claimant's disability. Bordelon v. Astrue, 281 F. App'x 418, 421 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431(5th Cir. 2006); Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir.

1991); <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 87-88 (1st Cir. 1991); <u>Martin v. Chater</u>, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing <u>Anderson v. Sullivan</u>, 925 F.2d 220, 222 (7th Cir. 1991)).  Davis "'must show that [he] was so <u>functionally impaired</u> by [his diagnosed impairments] that [he] was precluded from engaging in any substantial gainful activity.'"  <u>Bordelon</u>, 281 F. App'x at 421 (quoting <u>Hames</u>, 707 F.2d at 165); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992); <u>Hamauei v. Astrue</u>, No. 10-85, 2011 WL 802398, at *7 (E.D. La. Feb. 28, 2011) (quoting <u>Hames</u>, 707 F.2d at 165).

The ALJ found plaintiff's allegations of severe limitations not entirely credible because of inconsistencies between his allegations and the other record evidence, his failure to seek additional treatment, his activities of daily living and the clinical findings of the consultative examiner and plaintiff's treating health care providers.  (Tr. 16, 19-20).  The ALJ has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  <u>Spruill v. Astrue</u>, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting <u>Falco</u>, 27 F.3d at 164).  Thus, the ALJ's credibility evaluation is entitled to <u>considerable deference</u> by this court.  <u>McKnight v. Astrue</u>, 340 F. App'x 176, 181 (5th Cir. 2009); <u>Bedford v. Astrue</u>, 236 F. App'x 957, 962 (5th Cir. 2007).  The ALJ's explanation of his reasons for finding plaintiff not entirely

credible is all that is required.  James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d

426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-

1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ's findings regarding plaintiff's credibility are substantially supported by

the record.  His decision not to include any physical limitations in plaintiff's residual

functional capacity is therefore supported by substantial evidence.

"The ALJ found the medical evidence more persuasive than the claimant's own

testimony.  These are precisely the kinds of determinations that the ALJ is best

positioned to make."  Falco, 27 F.3d at 164.  "The ALJ properly considered the record

as a whole, including the available medical evidence and the nature and extent of the

plaintiff's daily activities, in determining that the plaintiff's subjective complaints were

not fully credible."  Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing

Hollis v. Bowen, 837 F.2d 1378, 1384-85 (5th Cir. 1988); Leggett v. Chater, 67 F.3d 558,

565 (5th Cir. 1995)).

Accordingly, this assignment of error lacks merit.

3.     The ALJ did not err in failing to find that Davis meets Medical-
       Vocational Rule 201.09.

Davis argues that the ALJ should have found him disabled under Medical-

Vocational Rule 201.09.  This rule provides that a claimant will be found disabled at the

fifth step of the sequential evaluation if he cannot perform his past relevant work, is restricted to sedentary work, is closely approaching advanced age, has a limited or less education and has only unskilled or no past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); id. Pt. 404, Subpt. P, App. 2, §§ 200.00, 201.09.

The ALJ did not err in this respect.  He found Davis not disabled at the fourth step, not the fifth, because he found that Davis has the residual functional capacity to perform the full exertional range of work and can perform his past relevant work as a longshoreman.  Thus, the ALJ did not reach the fifth step at which the Medical-Vocational Guidelines become applicable.  As discussed in the preceding section, substantial evidence supports the ALJ's residual functional capacity findings regarding plaintiff's exertional abilities.  Therefore, the ALJ did not err by failing to reach step five of the sequential evaluation or to apply Medical-Vocational Rule 201.09.

4.    The ALJ did not err in failing to give controlling weight to the opinion of plaintiff's treating psychiatrist.

Davis argues that the ALJ should have afforded controlling weight to the opinion of his treating psychiatrist, Abdul Khan, M.D., of Chartres Pontchartrain Behavioral Health Center.  On May 3, 2011, Dr. Khan wrote a "To whomever it may concern" note on a prescription pad, stating that "Terry Davis is a patient at this clinic since April 1st,

2011.  He is on medication and is not stable yet.  In my opinion he is unable to hold any

kind of job."  (Tr. 174, 248).

Davis contends that he "was a patient of Dr. Khan for several months."  Plaintiff's

memorandum, Record Doc. No. 13 at p. 14.  The record contains a similar note dated

August 30, 2011 by Andrew D. Calhoun, M.D., of Central City Behavioral Health Center

dated August 30, 2011, in which he states:

> I have recently begun to treat Terry Davis upon the retirement of his prior
> psychiatrist Dr. Khan.  In the past Dr. Khan offered the opinion on 5/3/11
> that Mr. Davis was not stable and would not be able to hold any kind of
> job.  In regards to the obligations related to his staying at Odyssey House[,]
> I concur with Dr. Khan's opinion and feel that [Davis] may still be unable
> to hold any kind of job.

(Tr. 247).  Plaintiff does not specifically rely on this later opinion of Dr. Calhoun,

although it is consistent with Dr. Khan's opinion.

Generally,

> [t]he opinion of the treating physician who is familiar with the claimant's
> impairments, treatments and responses, should be accorded great weight in
> determining disability.  A treating physician's opinion on the nature and
> severity of a patient's impairment will be given controlling weight if it is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with other substantial evidence. . . .
>      . . . . [T]he ALJ is free to reject the opinion of any physician when
> the evidence supports a contrary conclusion.  The treating physician's
> opinions are not conclusive.  The opinions may be assigned little or no
> weight when good cause is shown.  Good cause may permit an ALJ to
> discount the weight of a treating physician relative to other experts where
> the treating physician's evidence is conclusory, is unsupported by

medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).

For several reasons, the ALJ appropriately gave little weight to the opinions of Drs. Khan and Calhoun.  First, a treating source is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502.  The medical evidence shows that Davis only saw Dr. Khan twice, for initial evaluation on April 1 and for a follow up on May 3, 2011.  Davis was not seen by any other health care provider at Chartres in the interim before Dr. Khan wrote his perfunctory opinion.  Similarly, other than Dr. Calhoun's own statement on August 3, 2011, that he "recently" began seeing Davis, no medical records document that Dr. Calhoun treated Davis more than once.  Because Davis paid only "isolated visits" to Dr. Khan and Dr. Calhoun before they rendered their opinions, neither psychiatrist can be considered a treating source.  Clayborne v. Astrue, 260 F. App'x 735, 737 (2008) (citing 20 C.F.R. § 404.1502); Brown v. Astrue, 344 F. App'x 16, 19-20 (5th Cir. 2009) (citing 20 C.F.R. § 404.1502); Hernandez v. Astrue, 278 F. App'x 333, 338 & n.4 (5th Cir. 2008) (citing 20 C.F.R. § 404.1502).  Thus, their opinions are not entitled to controlling weight.

25

Second, even if the psychiatrists are considered treating sources, a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a determination that may be made <u>only</u> by the Commissioner. <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th Cir. 2003); <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001); <u>Tamez v. Sullivan</u>, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

> [S]ome opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." . . . The doctor's opinion [that plaintiff could not work] was not a medical opinion within the meaning of the regulation.

<u>Frank</u>, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e), (1) & (e)(3)); <u>see also</u> Social Security Ruling 96-5p, 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Finally, to the extent that they express medical opinions, the cursory statements of Drs. Khan and Calhoun are unsupported by any reference to plaintiff's treatment records. For the reasons cited by the ALJ, those records do not substantially demonstrate the level of severity that Davis claims.

The ALJ placed great weight on the opinions of Dr. Mours, who performed a consultative examination of Davis on August 5, 2011. (Tr. 244-46). The ALJ accorded

some weight to the opinions of Lynette Causey, Ph.D., a non-examining psychologist who reviewed the medical evidence on August 6, 2011. (Tr. 57-60). These opinions are consistent with each other and are substantially consistent with plaintiff's medical records that the ALJ found credible. The opinions of Drs. Mours and Causey are substantial evidence on which the ALJ appropriately relied to determine that Davis is capable of understanding, remembering and carrying out simple job instructions and making judgments in simple work-related situations.

For all of the foregoing reasons, this assignment of error lacks merit.

## CONCLUSION

The ALJ's finding that plaintiff's spinal disorder is not a severe impairment is irrelevant and non-prejudicial when the ALJ found him disabled at step four. Substantial evidence supports the ALJ's finding that Davis has the residual functional capacity to perform a full range of work at all exertional levels, with the nonexertional limitations noted in the opinion. The ALJ did not err in failing to find that Davis meets Medical-Vocational Rule 201.09. The ALJ did not err in failing to give controlling weight to the opinion of Dr. Khan or Dr. Calhoun.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this ___17th___ day of March, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.